1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**O**

# United States District Court
# Central District of California

WILLIENE JACKSON-JONES et al.,

             Plaintiffs,

     v.

EPOCH EVERLASTING PLAN, LLC et al.,

             Defendants.

Case № 2:23-cv-02567-ODW (SKx)

**ORDER DENYING**

**MOTIONS TO DISMISS [15][16]**

## I.    INTRODUCTION

Plaintiffs bring this putative class action against Defendants for unjust enrichment and violations of California's Unfair Competition Law ("UCL"). (Notice of Removal Ex. A ("Compl.") ¶¶ 78–102, ECF No. 1-1.)   Plaintiffs contend that Calico Critters Flocked Toys are banned hazardous substances under the Federal Hazardous Substances Act, 15 U.S.C. § 1261 ("FHSA") and allege that Defendants unlawfully market and sell these toys in violation of federal law.   (*Id.* ¶ 29.) Defendants move to dismiss Plaintiff's Complaint.   (Epoch Mot. ("Mot."), ECF No. 15; Amazon Joinder Mot., ECF No. 16.)   For the reasons below, the Court **DENIES** Defendants' Motions.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND

All factual references derive from Plaintiffs' Complaint, unless otherwise noted, and all well-pleaded factual allegations are accepted as true for purposes of these Motions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.    Statutory and Regulatory Framework

The FHSA prohibits the "introduction or delivery for introduction into interstate commerce of any misbranded hazardous substance or banned hazardous substance." 15 U.S.C. § 1263(a).   Under the FHSA, the term "hazardous substances" includes "any toy or other article intended for use by children" which the Consumer Products Safety Commission ("Commission") by "regulation determines presents an electrical, mechanical, or thermal hazard."    *Id.*  § 1261(f)(1)(D).[2]    "[M]echanical hazard" includes articles that "if, in normal use or when subjected to reasonably foreseeable damage or abuse, its design or manufacture presents an unreasonable risk of personal injury or illness . . . because the article (or any part or accessory thereof) may be aspirated or ingested."  *Id.* § 1261(s)(7).

In regulating children's toys, the Commission promulgated what has come to be known as the "Small Parts" rule.  16 C.F.R. § 1500.18(a)(9).  The rule provides that a toy poses a "mechanical hazard," and is thus a "banned hazardous substance" under the FHSA, if it is intended for use by children under three years old and presents a choking, aspiration, or ingestion hazard because of small parts.  *Schmidt*, 536 F. Supp. 3d at 899 (citing 16 C.F.R. § 1500.18(a)(9)).   Section 1501 of the Small Parts rule describes what is covered or exempt from § 1500.18(a)(9).  *See* 16 C.F.R. § 1501.1. Section 1501.2 lists "certain articles that are subject to § 1500.18(a)(9)"; § 1501.3 lists articles that are specifically exempted; and § 1501.4 provides a test method for determining whether an article is hazardous for children under three because it is "too

---

[2] The Consumer Product Safety Act, 15 U.S.C. § 2051, authorizes the Commission to declare a product a hazardous substance, require specific labeling, exempt substances from the full requirements of the FHSA, and ban substances altogether.  *See Schmidt v. Int'l Playthings LLC*, 536 F. Supp. 3d 856, 898–99 (D.N.M. 2021) (citing 15 U.S.C. §§ 1261(q)(1), 1262(a)(1), (b), (c)).

small." *Id.*   Regarding articles that are subject to the rule, § 1501.2(a) provides a "non-exclusive listing of 'covered products'" and, for "unlisted" articles, § 1501.2(b) provides "three non-determinative criteria" for assessing whether the product is subject to the rule.  *See Toy Mfrs. of Am., Inc. v. Consumer Prod. Safety Comm'n*, 630 F.2d 70, 78 (2d Cir. 1980).

**B.   Factual Background**

"The Calico Critters Flocked Toys consist of anthropomorphized animals dressed in human clothes—plastic, poseable animal figures with a flocked exterior, giving the feel of fur and functioning as a mix between a stuffed animal and a doll." (Compl. ¶ 17.)  "When a toy is 'flocked,' that means that its surface is coated in soft, fuzzy fibers that give the toy the feeling of velour or felt."  (*Id.* ¶ 18.)  The "Calico Critters Flocked Toys include accessories, furniture, and dollhouse playsets."  (*Id.* ¶ 19.)  Epoch Everlasting Play, LLC is responsible for designing, manufacturing, and marketing the Calico Critters Flocked Toys.  (*Id.* ¶ 14.)  Target Corporation and Amazon.com Services LLC both sell Epoch's Calico Critters Flocked Toys.  (*Id.* ¶¶ 15–16.)

Williene Jackson-Jones and Karen Santos purchased Calico Critters Flocked Toys for their grandchildren, from Amazon and Target, respectively.  (*Id.* ¶¶ 55, 59.) Jackson-Jones and Santos contend that Calico Critters Flocked Toys were sold unlawfully because they are (1) intended for children under three and (2) have small parts that violate the Small Parts regulation, and are therefore banned hazardous substances.  (*Id.* ¶¶ 17–32.)  They assert that the toys are intended for children under three because flocked figures are listed as articles subject to the Small Parts rule in 16 C.F.R. § 1501.2(a), and because Epoch and Target intentionally market the Calico Critters Flocked Toys to children under three, despite labeling the toy as "3+."  (*Id.* ¶¶ 20–49.)  Had Jackson-Jones and Santos known that the Calico Critters Flocked Toys were banned hazardous substances posing a risk of serious injury or death, they would not have purchased the toys.  (*Id.* ¶¶ 50–63.)

**C.     Procedural Background**

Plaintiffs Jackson-Jones and Santos initiated this putative class action against Defendants Epoch, Target, and Amazon.  (*Id.* ¶¶ 64–77.)  Plaintiffs assert claims for unjust enrichment and violation of the UCL premised on Defendants' introduction of banned hazardous substances, namely the Calico Critters Flocked Toys, into interstate commerce in violation of the FHSA.  (*Id.* ¶¶78–102.)

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (*See* Mot.)

### III.     LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

# IV.      DISCUSSION

Defendants move to dismiss Plaintiffs' claims on the basis that Plaintiffs cannot sufficiently allege that Calico Critters Flocked Toys are intended for children under three years of age because Plaintiff's interpretation of the Small Parts rule is untenable.  (Mot. 3.)  Defendants contend the plain language of § 1501.2 either does not support Plaintiffs' interpretation, or is ambiguous and renders Plaintiffs' claims less than plausible.  (*Id.* at 3–4.)  Defendants assert that the proper interpretation of the Small Parts rule demonstrates that flocked toys are not *per se* intended for use by children under three pursuant to the list of included articles in § 1501.2(a), but that a case-by-case application of the three-factor test in § 1501.2(b) is required to determine whether any particular flocked toy is subject to the rule.  (*Id.*)

Plaintiffs oppose dismissal.  (*See* Opp'n, ECF No. 26.)  Plaintiffs argue the plain language of § 1501.2 is unambiguous and supports their interpretation that flocked toys are intended for use by children under three, as a matter of law, pursuant to § 1501.2(a).  (*Id.* at 6–10.)  They assert that, even if the Court finds § 1501.2(a) ambiguous, such that application of the three-factors in § 1501.2(b) may be required, Plaintiffs have sufficiently alleged that Calico Critters Flocked Toys are intended for children under three years of age according to the three factors.  (*Id.* at 10–12.)

The Court finds the plain language of § 1501.2 unambiguously defines flocked animals and figures as undeniably intended for children under three years of age.[3]

## A.      Statutory or Regulatory Interpretation

Statutory or regulatory construction begins with the plain language of the statute or regulation.  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (statutory); *Safe Air*, 488 F.3d at 1097 (regulatory).  "[W]here the [plain] language

---

[3] As the Court finds § 1501.2's plain language unambiguous, it need not, and does not, consider agency guidance in interpreting the regulation.  *See Safe Air for Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1097 (9th Cir. 2007) (stating that an agency's interpretation of its regulation "should not be considered when the regulation has a plain meaning").  Accordingly, the Court denies as moot Defendants' Request for Judicial Notice of communications and comments from the Commission.  (Req. Judicial Notice, ECF No. 15-1.)

provides a clear answer, it ends there as well." *Hughes Aircraft*, 525 U.S. at 438; *Safe Air*, 488 F.3d at 1097.   "Ordinarily, a word's usage accords with its dictionary definition," but context will also inform its meaning. *Yates v. United States*, 574 U.S. 528, 537 (2015).

Traditional canons of interpretation guide a court's construction. *In re Dumont*, 581 F.3d 1104, 1111 (9th Cir. 2009).  Courts should "resist reading words or elements into a statute [or regulation] that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997).  They must strive to "give effect, if possible, to every clause and word" of a statute or regulation. *Duncan v. Walker*, 533 U.S. 167, 174 (2001). "No clause, sentence, or word shall be superfluous, void, or insignificant." *In re Dumont*, 581 F.3d at 1111.

Familiar interpretive guides may also aid a court's construction. *Yates*, 574 U.S. at 539.  The canon *nositur a sociis*—a word is known by the company it keeps— provides that a "word is given more precise content by the neighboring words with which it is associated." *Id.* at 543 (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)).  The related canon, *ejusdem generis*, provides that, "where general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* at 545 (alteration in original) (quoting *Wash. State Dep't Soc. & Health Servs. v. Guardianship Est. Keffeler*, 537 U.S. 371, 384 (2003)).

**B.    16 C.F.R. § 1501.2**

Section 1501.2 "describes certain articles that are subject to § 1500.18(a)(9)." 16 C.F.R. § 1501.1.

It states:

**(a)  This regulation** (§ 1500.18(a)(9) and the criteria described in § 1501.4 below) **applies to all toys and other articles intended for use by children under 3 years** (36 months) of age that are introduced into interstate commerce after the effective date.  **Such articles include, but are not to limited to**: squeeze toys; teethers; crib exercisers; crib gyms;

6

crib mobiles; other toys or articles intended to be affixed to a crib, stroller, playpen, or baby carriage; pull and push toys; pounding toys; blocks and stacking sets; bathtub, wading pool and sand toys; rocking, spring, and stick horses and other figures; chime and musical balls and carousels; jacks-in-the-box; stuffed, plush, and **flocked animals and other figures**; preschool toys, games and puzzles intended for use by children under 3; riding toys intended for use by children under 3; infant and juvenile furniture articles which are intended for use by children under 3 such as cribs, playpens, baby bouncers and walkers, strollers and carriages; dolls which are intended for use by children under 3 such as baby dolls, rag dolls, and bean bag dolls; toy cars, trucks, and other vehicles intended for use by children under 3.  In addition, such articles include any other toys or articles which are intended, marketed or labeled to be entrusted to or used by children under 3 years of age.

**(b)** In determining which toys and other articles are intended for use by children under 3 years (36 months) of age, for purposes of this regulation, the following factors are relevant: the manufacturer's stated intent (such as on a label) if it is a reasonable one; the advertising, promotion, and marketing of the article; and whether the article is commonly recognized as being intended for children under 3.

**(c)** This regulation does not apply to toys or articles which are solely intended for use by children 3 years of age or older.  In addition, it does not apply to all articles to which children under 3 years of age might have access simply because of presence in a household.  Certain articles which are specifically exempted from this regulation are listed in § 1501.3 below.

16 C.F.R. § 1501.2 (emphases added).

## C.   Analysis

Section 1501.2 begins by describing its subject: "This regulation . . . applies to all toys and other articles intended for use by children under 3 years . . . of age . . . ." *Id.* § 1501.2(a).  The parties' dispute the correct interpretation of the clause "intended for use by children under 3."  Plaintiffs contend a toy or article is "intended for use by

children under 3" as a matter of law, pursuant to § 1501.2, if it is identified as one of the "articles include[d]." (Compl. ¶¶ 21–22; Opp'n 5–10.) If a toy or article is not listed in § 1501.2(a), Plaintiffs assert it may still be "intended for children under 3" if an analysis of the three "relevant" factors in § 1501.2(b) demonstrate as much. (Opp'n 10–12; *see also* Compl. ¶¶ 33–49.) In contrast, Defendants contend that a toy or article is *not* "intended for children under 3" unless a case-by-case analysis of § 1501.2(b)'s three factors demonstrates it is, regardless of whether the article is identified in subsection (a)'s list of "articles include[d]." (*See* Mot. 4, 10–12.)

   1.   *Plain Language*

   Subsection (a) lists fourteen specific types of toys or articles, five general types of toys or articles, and has a catch-all provision for "any other toys or articles" that are "intended for use by children under 3 years" of age. 16 C.F.R. § 1501.2(a). Relevant here, the last item identified in the list of specific toys is "flocked animals and other figures." *Id.*

   Prefacing subsection (a)'s lists is the clause, "such articles include, but are not limited to." *Id.* To "include" means "[t]o contain as a part of something," *Include*, Black's Law Dictionary (11th ed. 2019), or "to take in or comprise as a part of a whole or group," *Include*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/include (last accessed Nov. 9, 2023). Putting this together, flocked figures are "contain[ed]" in or "comprise" a part of the group of "such articles" that are intended for use by children under three. 16 C.F.R. § 1501.2(a) ("Such articles include [i.e., contain, or are comprised of] . . . flocked animals and other figures . . . .").

   Subsection (a) proceeds from the specific, i.e., fourteen specific types of articles that are definitively included as intended for use by children under three, to the general, five general types of articles commonly understood to be intended for use by children of varying ages. 16 C.F.R. § 1501.2(a) (listing five general types of articles: "preschool toys, games and puzzles"; "riding toys"; "infant and juvenile furniture

articles"; "dolls"; and "toy cars, trucks, and other vehicles").  These five generalized articles incorporate a self-limiting qualifier: "intended for use by children under 3." *Id.*  Therefore, before an article of the type listed in these five broader categories will be "include[d]" in "such articles," it must be determined that the article is "intended for use by children under 3."  The final broadest category, the catch-all of "any other toys or articles," similarly limits its contents to only those toys "which are intended, marketed or labeled to be entrusted to or used by children under 3."  *Id.*

In sum, the first fourteen specific articles listed in subsection (a) are "include[d]" in "such articles" without a qualifier, and thus there is no need to assess the item to determine that it is, in fact, intended for use by children under three.  The next five more general types of articles include a self-limiting qualifier, meaning those items are "include[d]" in "such articles" only if they are determined to be "intended for use by children under 3."  The final catch-all similarly incorporates a self-limiting qualifier, such that "any other toys or articles" may be "include[d]" in "such articles" and subject to the regulation if they are determined to be "intended, marketed or labeled" for use by children under three.

Enter subsection (b).  This subsection provides three factors that are "relevant" "[i]n determining which toys and other articles are intended for use by children under 3 years."  16 C.F.R. § 1501.2(b).  The relevant factors come immediately after the list of five general types of "toys and other articles" and the catch-all "any other toys or other articles," each of which incorporate the defining qualifier "intended for use by children under" three.  Considering these provisions and clauses in context, the identified articles with a defining qualifier in subsection (a) are followed immediately by the three factors in subsection (b); the factors are described as "relevant" to determining whether an article or toy is indeed "intended for children under 3," and thus "include[d]" in "such articles" under the Small Parts rule.  *Id.* ("In determining which toys and other articles are intended for use by children under 3 years . . . for purposes of this regulation, the following factors are relevant . . . .").

Applying the above plain language construction to a hypothetical toy, a product identified in the first fourteen specific toys or articles, like "flocked" figures, is "include[d]" as an "article[] intended for use by children under 3 years."  16 C.F.R. § 1501.2(a).  A product not identified in the initial fourteen articles, but listed in the following five more general types of articles, such as "dolls which are intended for use by children under 3," is "include[d]" in "such articles" if an assessment of the relevant three factors from subsection (b) determines the doll is indeed intended for use by children under three.  Finally, a product that is not identified, either specifically or generally, in subsection (a) is captured by the catch-all, "any other toys or articles," and is "include[d]" in "such articles" if an assessment of the three relevant factors from subsection (b) determines the unlisted product is indeed intended for use by children under three.

The foregoing interpretation gives effect "to every clause and word," *Duncan*, 533 U.S. at 174, does not render any clause or word superfluous, *In re Dumont*, 581 F.3d at 1111, and reads nothing into the regulation that does not appear on its face, *Bates*, 522 U.S. at 29.  It is consistent with *noscitur a sociis* and *ejusdem generis*, in that the contextual analysis proceeds from (a) to (b), from specific to general, with content made more precise by reference to associated neighboring words.  *See Yates*, 574 U.S. at 543–45.

Finally, this interpretation is consistent with other courts' construction of the regulation.  For instance, the Second Circuit in *Toy Manufacturers of America Inc.* considered whether the regulation provided sufficient guidance to manufacturers regarding whether products would be subject to the Small Parts rule.  630 F.2d at 78.  The court there concluded that "the non-exclusive listing of 'covered products' provides a reasonable degree of guidance in assessing many articles."  *Id.*  "To the extent that it remains uncertain whether an 'unlisted' article falls within the coverage of the Small Parts Regulation, [the court] believe[d] that application of the three non-determinative criteria will resolve the issue satisfactorily in most, if not all,

1   cases." *Id.* (footnote omitted); *see also Schmidt*, 536 F. Supp. 3d at 930 (finding a
2   Calico Critters flocked toy "intended for use by children under three years . . . as a
3   matter of law" because flocked toys are "listed in § 1501.2(a)" (internal quotation
4   marks omitted)).

5       The above analysis demonstrates that the plain language "provides a clear
6   answer" and is consistent with traditional rules of statutory construction. *Hughes
7   Aircraft*, 525 U.S. at 438.   Accordingly, the Court's interpretation of § 1501.2
8   rightfully ends here. *Id.*

9       *2.    No Ambiguity*

10      Defendants contend that, even if the Court finds Plaintiffs' interpretation
11  reasonable, which the Court does, § 1501.2 is nevertheless ambiguous because it is
12  susceptible to Defendants' proposed interpretation as well.  (*See* Mot. 3–4, 12–17.)
13  Defendants seek dismissal on the basis that Plaintiffs' claims are not plausible if
14  § 1501.2 is found to be ambiguous.  (*Id.*)

15      Language of a regulation is considered ambiguous "if reasonable people could
16  find its terms susceptible to more than one interpretation." *Nat. Res. Def. Council,
17  Inc. v. County of Los Angeles*, 725 F.3d 1194, 1205 (9th Cir. 2013); *Kisor v. Wilkie*,
18  --- U.S. ---, 139 S. Ct. 2400, 2410 (2019) (stating that a regulation "susceptible to
19  more than one reasonable reading" is "genuinely ambiguous").   "The plainness or
20  ambiguity of statutory language is determined by reference to the language itself, the
21  specific context in which that language is used, and the broader context of the statute
22  as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

23      Defendants' desired construction of § 1501.2 proposes that no toy or article will
24  be deemed as "intended for children under 3" unless a case-by-case analysis of
25  § 1501.2(b)'s three factors demonstrates that it is.  (*See* Mot. 4, 10–12.)  Defendants
26  contend the three-factor analysis is thus required irrespective of the lists of identified
27  articles in subsection (a).  (*Id.*)

28

Defendants' proposed construction violates basic tenets of interpretation, in particular that "every clause and word" of a regulation must be "give[n] effect," *Duncan*, 533 U.S. at 174, and that "no clause sentence, or word shall be superfluous, void, or insignificant," *In re Dumont*, 581 F.3d at 1111.  Defendants' reading would render the lists of identified articles, which comprise more than 80% of subsection (a) (roughly 181 words out of 222), superfluous or insignificant at best, leaving only the first sentence fully in play.  No reasonable person could find § 1501.2 susceptible to such an eviscerating interpretation.  *Cf. Kisor* 139 S. Ct. at 2410.  As the Court finds the regulation is not reasonably susceptible to Defendants' proposed construction, the Court does not find the regulation ambiguous.

Defendants cite *Schmidt*, from the District Court of New Mexico, for support that the regulation is ambiguous.  (*See* Mot. 13.)  The court in *Schmidt* found § 1501.2 was ambiguous because it was "subject to two reasonable interpretations."  536 F. Supp. 3d at 919.  The first interpretation provided that subsection (b)'s three factors should be assessed first, to determine whether a toy is intended for use by children under three, and that subsection (a)'s identified articles merely offer an additional factor for assessment.  *Id.*  The second interpretation provided that subsection (a)'s identified articles include items that are definitely intended for use by children under three, and unlisted items are evaluated using subsection (b)'s three factors.  *Id.*

To the extent that the court in *Schmidt* found § 1501.2 ambiguous based on these two interpretations, the Court respectfully disagrees.  For one thing, the Court finds it illogical to begin in the middle of a regulation, as *Schmidt's* first interpretation would do, by starting with (b)'s three factors and then backtracking to consider (a)'s identified articles as an additional factor.  For another, *Schmidt's* first interpretation impermissibly reads words into subsection (b) that are not written there, namely by adding a fourth factor (i.e., whether an article is identified in (a)'s lists) to (b)'s express *three* relevant factors.

Accordingly, the Court finds § 1501.2 is not reasonably susceptible to Defendants' proposed interpretation here, nor is it reasonably susceptible to the first articulated interpretation in *Schmidt*.  As such, the Court finds that Defendants have not established ambiguity in § 1501.2.  The Court's plain language interpretation above stands.

      3.    *Plaintiffs' Claims*

Plaintiffs allege the Calico Critters Flocked Toys are banned hazardous substances under the FHSA because flocked toys are intended for use by children under three as a matter of law and have small parts that violate the Small Parts rule. (*Id.* ¶¶ 2, 28–29.)  Plaintiffs premise each of their causes of action on Defendants' unlawful marketing and sale of Calico Critters Flocked Toys, in violation of the FHSA.  (*See* Compl. ¶¶ 7, 80, 89–93, 98.)  As the Court finds Plaintiffs' interpretation of § 1501.2 consistent with the regulation's plain language as well as traditional rules and canons of interpretation, the Court concludes that Plaintiffs sufficiently allege plausible claims against Defendants.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motions to Dismiss.  (ECF Nos. 15, 16.)

**IT IS SO ORDERED.**

November 13, 2023

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

13